1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

NICHOLAS STERLING LITTLE,

                          Petitioner,

         v.

RONALD HAYNES,

                          Respondent.

Case No. C20-1071-TSZ-MLP

REPORT AND RECOMMENDATION

## I.    INTRODUCTION

This is a federal habeas action filed under 28 U.S.C. § 2254. Nicholas Sterling Little ("Petitioner"), proceeding *pro se*, is currently incarcerated at the Stafford Creek Corrections Center in Aberdeen, Washington. Petitioner seeks to challenge a 2015 judgment and sentence of the King County Superior Court for convictions of child molestation in the first degree. Respondent filed an answer to Petitioner's habeas petition and submitted relevant portions of the state court record. Having considered the parties' submissions, the governing law, and the balance of the record, the Court recommends Petitioner's habeas petition (dkt. # 6) be DENIED, that this action be DISMISSED with prejudice, and that a certificate of appealability be DENIED as to all claims.

REPORT AND RECOMMENDATION - 1

1

## II.    BACKGROUND

2

**A.    Statement of Facts**

3

Petitioner is in custody under a state court judgment and sentence entered by the King

4

County Superior Court for multiple convictions of child molestation in the first degree in 2015.

5

(State Court Rec. I, Ex. 1 (Dkt. # 25-1) at 2-14.) The Washington State Court of Appeals ("Court

6

of Appeals") summarized the facts relevant to Petitioner's underlying convictions as follows:

7

> In 2014, a jury convicted Nicholas Little of six counts of child molestation in the
> first degree in King County Superior Court No. 13-1-09584-6 SEA. This court's

8

> decision affirming his convictions summarized the underlying facts as follows:

9

>> Little and the victims' mother in this case dated and eventually lived
>> together with the mother's three daughters—A.M., J.M., and H.M.

10

>> J.M. and H.M. are twins. A.M. is the eldest daughter. A.M. was ten
>> and the twins were eight during trial.

11

12

>> The twins disclosed to their friend, H.B., that they had been sexually
>> abused. H.B. then told her mother, who reported the matter to child

13

>> protective services.

14

>> A.M., J.M., and H.M. were interviewed by a child protective
>> services investigator, a Seattle police officer, and a child interview

15

>> specialist. The children later made statements to their mother about
>> the abuse. Two forensic nurse examiners also examined the
>> children.

16

> After receiving the initial report, Child Protective Services (CPS) caseworker Ana

17

> Mejia interviewed A.M., J.M. and H.M. at their elementary school. J.M. and H.M.
> initially denied that they had been molested, but A.M. disclosed abuse by Little.

18

> Later that day, Seattle Police Officer Willie Askew interviewed A.M. She again
> disclosed abuse by Little. Two days later, child forensic interview specialist

19

> Carolyn Webster conducted video recorded interviews during which all three
> children described details of abuse by Little. A.M. and J.M. also disclosed abuse by

20

> Little to forensic nurse examiners.

21

(State Court Rec. IV, Ex. 30 (Dkt. # 30) at 6-7.)

22

23

REPORT AND RECOMMENDATION - 2

1

### B.    Procedural History

Petitioner appealed his convictions and sentence to the Court of Appeals. (*See* State Court Rec. I, Exs. 3-5; State Court Rec. II, Ex. 6 (Dkt. ## 26-28).) On January 30, 2017, the Court of Appeals issued an unpublished opinion affirming Petitioner's judgment and sentence. (State Court Rec. I, Ex. 2 at 49-50.) Relevant to Petitioner's habeas petition, the Court of Appeals declined to consider several claims Petitioner raised *pro se* in a "Statement of Additional Grounds for Review" ("SAGR") because the pleading exceeded page limits under the Washington Rules of Appellate Procedure. (*Id.* at 34.)

Petitioner next sought review by the Washington Supreme Court. (State Court Rec. III, Ex. 9 (Dkt. # 29).) Petitioner presented the following issues to the Washington Supreme Court:

1.    When a defendant presents specific, credible allegations that his attorney actually prevented him from testifying at trial he is entitled to an evidentiary hearing. Should this Court grant review in the substantial public interest where Mr. Little explained his attorney had instructed him that because he smelled of alcohol, he could be thrown in jail if he testified, but the trial court denied Mr. Little's motion for a new trial and refused to grant him an evidentiary hearing? RAP 13.4(b)(4).

2.    Pursuant to the Due Process Clause and the Sixth Amendment, a defendant must be given a meaningful opportunity to present a complete defense, including evidence of another suspect where it tends to connect the other person with the crime. Should this Court grant review in the substantial public interest where the initial report suggested a grandfather[-]like figure had committed the crime and the children's maternal grandfather had lived with the children for periods of time, but the trial court precluded Mr. Little from presenting evidence indicating the maternal grandfather was the actual perpetrator? RAP 13.4(b)(4).

3.    Under RCW 9A.44.120, hearsay statements made by young children may be admissible at trial when they are determined to be reliable. [Petitioner's footnote omitted.] Should review be granted in the substantial public interest where the evidence showed the children had a motive to lie, made the claims in response to the CPS worker's leading questions, and that two of the children changed their stories after spending time with a family member, but the trial court found the statements reliable? RAP 13.4(b)(4).

4.    Hearsay statements may be admitted under the medical diagnosis or treatment exception in ER 803(a)(4), but the declarant's motive must have been to promote treatment and the medical professional must have reasonably relied on the statement for purposes of treatment. Should this Court grant review in the substantial public interest where the children's hearsay statements to the forensic nurse examiner were admitted at trial but the children had no incentive to be truthful to the nurse in order to obtain proper care? RAP 13.4(b)(4).

5.    A defendant may be denied his constitutional right to a fair trial when the prosecuting attorney acts improperly and the defendant is prejudiced. Should this Court grant review in the substantial public interest where the prosecutor improperly impugned defense counsel's integrity and commented on Mr. Little's failure to testify? RAP 13.4(b)(4).

6.    Should this Court grant review in the substantial public interest because probable cause did not exist for Mr. Little's arrest? RAP l3.4(b)(4).

7.    Should this Court grant review in the substantial public interest because the State failed to disclose exculpatory evidence? RAP 13.4(b)(4).

8.    Should this Court grant review in the substantial public interest because the trial court improperly denied Mr. Little the opportunity to present evidence of a prior sexual abuse report? RAP 13 .4(b)(4).

9.    Should this Court grant review in the substantial public interest because Mr. Little was denied his constitutional right to an impartial jury? RAP 13.4(b)(4).

10.    Should this Court grant review in the substantial public interest because the State presented insufficient evidence for a rational trier of fact to find Mr. Little guilty of child molestation beyond a reasonable doubt? RAP 13.4(b)(4).

(*Id.* at 18-20.) On August 2, 2017, the Washington Supreme Court denied review without comment. (State Court Rec. III, Ex. 10.) On August 18, 2017, the Court of Appeals issued the mandate terminating direct review. (State Court Rec. III, Ex. 11.)

On July 30, 2018, Petitioner filed a motion for relief from judgment in the King County Superior Court, which was transferred to the Court of Appeals as a personal restraint petition on March 15, 2019. (State Court Rec. III, Ex. 13; State Court. Rec. IV, Ex. 15.) On November 26,

REPORT AND RECOMMENDATION - 4

2019, the Court of Appeals denied the personal restraint petition. (State Court Rec. IV, Ex. 16.) On December 26, 2019, Petitioner sought discretionary review by the Washington Supreme Court. (State Court Rec. IV, Ex. 17.) Petitioner presented the following issues to the Washington Supreme Court:

> 1. Whether in light of the nature of the evidence and the alleged offenses, the *Franklin* test for admissibility was met [at] the 7.8 hearing.
>
> 2. Whether the requirement for third party suspect admission must be modified to eliminate "motive" in a child sexual assault prosecution, or where evidence of opportunity and/or identification by a victim is otherwise sufficient to establish the constitutional nexus required by this Court and the United States Supreme Court.

(*Id*. at 20.) On April 6, 2020, the Commissioner of the Washington Supreme Court denied review, determining Petitioner failed to demonstrate review was warranted under the Washington Rule of Appellate Procedure 13.4(b). (State Court Rec. IV, Ex. 18 at 49.) On July 22, 2020, the Court of Appeals issued a certificate of finality. (State Court Rec. IV, Ex. 21.) Petitioner now seeks federal habeas review of his convictions.

## III.    GROUNDS FOR RELIEF

Petitioner's habeas petition itself does not set forth any grounds for relief. (*See* Pet. (Dkt. # 6).) Instead, Petitioner's habeas petition refers to an attached memorandum that raises the following claims:

> 1. The State Prosecutors failed to disclose exculpatory evidence and misdirected the court with improper litigation conduct to advance the prospects of gaining a conviction. Prosecutors did not fulfill their oaths by directly lying to the Court about the knowledge of police reports and hiding evidence that another person(s) committed the crime. (Pet.'s Mem. (Dkt. # 6-3) at 3.)
>
> 2. The Trial Court erroneously excluded "other suspect" evidence which violated Petitioner[']s right to present a defense under U.S. Supreme Court case law, Federal laws, and the U.S. Constitution. The Lower Courts

1    application of the C.P.S. intake report (using it to accuse the Petitioner)
2    was unreasonable because the C.P.S. intake report specifically identifies
     someone other than the defendant committed the crimes. The lower
3    Court(s) disavowed any reference to that suspect or any other suspects.
     (*Id.* at 4.)

4    3.    Defense counsel provided Ineffective Assistance of Counsel by failing to
           investigate and consider black and white exculpatory evidence found
5          post-trial by laypersons. Counsel failed to interview other
           suspects/fact-witnesses identified in newly discovered evidence and failed
6          to address impeachable witness testimony, bias evidence, and evidence of
           third-party guilt. In view of defense counsel's inexplicable failure to
7          investigate, he could not have rendered effective assistance. (*Id.*)

8    4.    The newly discovered evidence; substantiates the C.P.S. intake report,
           revealed impeachment evidence, revealed bias evidence, contained
9          material evidence of third-party guilt that demonstrates a complete
           miscarriage of justice. In light of new evidence, no reasonable factfinder
10         could've found Petitioner guilty because probable cause existed for a
           babysitter's arrest and exonerates the petitioner. Destruction of documents
11         pertaining probable cause violated the right to due process. (*Id.*)

12   5.    Petitioner was denied his right to testify when counsel prevented him from
           taking the stand and the Prosecution improperly commented on the
13         uncontradicted nature of the hearsay statements. Petitioner[']s waiver was
           not made knowingly, voluntarily, or intelligently, it was made in fear of
14         being held in contempt if he spoke at all. (*Id.* at 4-5.)

15                              **IV.    DISCUSSION**

16       Respondent concedes Petitioner exhausted his second, third, and fifth grounds for relief,

17   but argues he failed to properly exhaust his first and fourth grounds for relief. (Answer (Dkt.

18   # 24) at 6.) Respondent contends Petitioner's "incorporation by reference" of claims concerning

19   his first and fourth grounds for relief to the Washington Supreme Court in his motion for

20   discretionary review did not fairly present those claims. (*Id.* at 8-15.) As such, Respondent

21   argues Petitioner's unexhausted claims are procedurally barred and Petitioner is otherwise not

22   entitled to relief on any of his exhausted claims. Petitioner counters he properly exhausted all of

23   his grounds for relief because the substance of his claims was presented in a manner sufficient to

REPORT AND RECOMMENDATION - 6

put the state courts on notice as to his federal constitutional claims. (*See* Pet.'s Reply (Dkt. # 42) at 2-4.)

The Court will first examine whether Petitioner has properly exhausted the grounds for relief addressed in his Petition before turning to an examination of his claims on the merits.

### A.   Exhaustion and Procedural Default

#### 1.   *Legal Standards*

A state prisoner is required to exhaust all available state court remedies before seeking a federal writ of habeas corpus. 28 U.S.C. § 2254(b)(1). The exhaustion requirement is a matter of comity, intended to afford the state courts "an initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Picard v. Connor*, 404 U.S. 270, 275 (1971) (citations and internal quotation marks omitted). In order to provide the state courts with the requisite "opportunity" to consider his federal claims, a prisoner must "fairly present" his claims to each appropriate state court for review, including a state supreme court with powers of discretionary review. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing *Duncan v. Henry*, 513 U.S. 364, 365 (1995); *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999)). The petitioner must present the claim to the state's highest court, even where such review is discretionary. *O'Sullivan*, 526 U.S. at 845.

It is not enough that the facts necessary to support a prisoner's federal habeas claim were before the state courts or that a somewhat similar state law claim was made. *Anderson v. Harless*, 459 U.S. 4, 6 (1982). The habeas petitioner must have "fairly presented" the "substance" of his federal habeas corpus claims to the state courts. *Id*. "It has to be clear from the petition filed at each level in the state court system that the petitioner is claiming the violation of the federal constitution that the petitioner subsequently claims in the federal habeas petition." *Galvan v. Alaska Dep't of Corrs.*, 397 F.3d 1198, 1204 (9th Cir. 2005). Consequently,

"[i]f a petitioner fails to alert the state court to the fact that he is raising a federal constitutional claim, his federal claim is unexhausted regardless of its similarity to the issues raised in state court." *Johnson v. Zenon*, 88 F.3d 828, 830 (9th Cir. 1996).

When a petitioner fails to exhaust his state court remedies, and the court to which petitioner would be required to present his claims in order to satisfy the exhaustion requirement would now find the claims procedurally barred, there is a procedural default for purposes of federal habeas review. *See Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991). In such instances, federal habeas review of the claims is barred unless the prisoner can demonstrate "cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate failure to consider the claims will result in a fundamental miscarriage of justice." *Id.* at 750.

        2.    *Analysis*

The Court concludes Petitioner exhausted his second, third, and fifth grounds for relief for federal habeas review because he properly raised those grounds to the Washington Supreme Court on both direct and state collateral review. (*See* State Court Rec. III, Ex. 9 at 18-20; State Court Rec. IV, Ex. 17 at 20.) Furthermore, Respondent does not contest Petitioner properly exhausted those grounds. (*See* Answer at 4, 6.) However, the Court concludes Petitioner's "incorporation by reference" of his claims considered under his first and fourth grounds for relief in his motion for discretionary review to the Washington Supreme Court did not constitute fair presentation necessary for proper exhaustion as to those claims.

Petitioner's first and fourth grounds for relief were presented to the Washington Supreme Court in a motion for discretionary review solely by means of reference to his SAGR that Petitioner submitted *pro se* during his Court of Appeals' briefing on direct appeal. (*See* State

Court Rec. III, Ex. 9 at 19-20, 36-37.) In *Baldwin v. Reese*, the Supreme Court noted federal habeas corpus law does not require a state court judge to read through lower court opinions or briefing to discover the existence of a federal claim. 541 U.S. at 30-32. "[O]rdinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so." *Id.* at 32.

In some circumstances, the Ninth Circuit has allowed "incorporation by reference" of a prior court document to satisfy the exhaustion requirement. In *Insyxiengmay v. Morgan*, the Ninth Circuit found fair presentation for habeas exhaustion purposes occurs with presentation of a federal constitutional claim: "(1) to the proper forum, (2) through the proper vehicle, and (3) by providing the proper factual and legal basis for the claim[.]" 403 F.3d 657, 668 (9th Cir. 2005) (citations and internal quotations omitted). In *Insyxiengmay*, the petitioner presented three claims to the Washington Supreme Court by including a copy of his personal restraint petition in an appendix to his motion for discretionary review. *Id.* The Ninth Circuit found fair presentation of the petitioner's claims as federal issues because the petitioner's personal restraint petition in the attached appendix contained arguments as to his federal constitutional claims raised.[1] *Id.* at 668-69; *see also Scott v. Schriro,* 567 F.3d 573, 582-83 (9th Cir. 2009) (finding fair presentation where petitioner included his ineffective assistance of counsel claims in an appendix to his state petition for review).

---

[1] Respondent notes Washington law does not allow for incorporation by reference. *See, e.g., State v. I.N.A.*, 9 Wash.App.2d 422, 426 (Wash. App. Div. 1 2019) (citing *State v. Gamble*, 168 Wash.2d 161, 180 (2010)) ("[T]he proper approach is for the attorney to set forth the party's complete argument in the argument section of the merits brief.") The Court however considers this issue within the context of federal habeas case law.

1    Since *Insyxiengmay*, this Court has found exhaustion where a petitioner's motion seeking

2    discretionary review identifies an issue for review and specifically attaches briefs or other

3    documents to the petition itself that contain the petitioner's arguments in support of the raised

4    issue. *See, e.g.*, *Silva v. Holbrook*, 2016 WL 8235139, at *6 (W.D. Wash. Nov. 2, 2016), *report*

5    *and recommendation adopted*, 2017 WL 568822 (W.D. Wash. Feb. 13, 2017) (finding

6    exhaustion where petitioner attached a full copy of his personal restraint petition and

7    supplemental petition to his motion for discretionary review to the Washington Supreme

8    Court); *Wiggin v. Miller-Stout*, 2015 WL 2137319, at *7 (W.D. Wash. Mar. 20, 2015), *report*

9    *and recommendation adopted*, 2015 WL 2137439 (W.D. Wash. May 6, 2015). Conversely, this

10    Court has found failure to satisfy the fair presentation requirement where the Court was required

11    to "read beyond a petition or brief" to uncover petitioner's federal claim. *See Womack v.*

12    *Holbrook*, 2019 WL 2437842, at *5-6 (W.D. Wash. Feb. 1, 2019), *report and recommendation*

13    *adopted*, 2019 WL 2436255 (W.D. Wash. June 11, 2019); *Parker v. Obenland*, 2015 WL

14    7731411, at *10 (W.D. Wash. Oct. 26, 2015), *report and recommendation adopted*, 2015 WL

15    7736657 (W.D. Wash. Nov. 30, 2015).

16    Pertinent to the instant matter, this Court in *Womack* similarly dealt with the issue of fair

17    presentation concerning a petitioner's statement of additional grounds for review. 2019 WL

18    2437842 at *5-6. In *Womack*, the petitioner alleged he exhausted several of his claims by raising

19    them in a statement of additional grounds for review that he submitted to the Court of Appeals

20    on direct appeal and by subsequently referring to the statement in his motions seeking

21    discretionary review to the Washington Supreme Court on both direct appeal and collateral

22    review. *Id.* at *5. This Court found petitioner's statement of additional grounds did not "fairly

23    and fully" present his statement of additional grounds claims because the petitioner attached only

1    the Court of Appeals' order dismissing his petition to his motion for discretionary review on

2    collateral review and failed to provide "the proper factual and legal basis for the claim[s]" to the

3    Washington Supreme Court. *Id.* at *6. As such, the Court determined petitioner's claims were

4    procedurally defaulted. *Id.*

5           Here, Petitioner did not fairly present his failure to disclose exculpatory evidence and

6    newly discovered evidence claims—the basis for his first and fourth grounds of relief in his

7    habeas petition—to the Washington Supreme Court because he failed to present a factual and

8    legal argument in support of each claim. In his motion for discretionary review on his direct

9    appeal, Petitioner submitted substantive argument about his first three issues on review. (*See*

10   State Court Rec. III, Ex. 9 at 6-18.) However, the last two pages of his motion included several

11   conclusory statements about his remaining issues and referenced his SAGR for argument as to

12   those claims. (*Id.* at 18-20.) In relevant part to Petitioner's first and fourth grounds for relief, the

13   totality of argument Petitioner's motion for discretionary review of his direct appeal submitted

14   was:

15           As explained in Mr. Little's Statement of Additional Grounds for Review, the State
16           failed to disclose exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S.
             83, 87, 83 S. Ct. 1194, 10 L. Ed. 2 1215 (1963); *see also Mike v. Ryan*, 711 F.3d
17           998 (9th Cir. 2013). This Court should grant review. RAP 13.4(b)(4).

18                                                . . .

19           As explained in Mr. Little's Statement of Additional Grounds for Review, Mr.
             Little's constitutional right to due process was violated because his convictions are
20           based upon insufficient evidence. *In re Winship*, 397 U.S. 358, 364, 90 S. Ct. 1068,
             25 L. Ed. 2d 368 (1970); U.S. Const. amend. XIV; Const. art. I, § 3. This Court
             should grant review. RAP 13.4(b)(4).

21

22   (State Court Rec. III, Ex. 9, at 36-37.) Per the state court record filed in this matter,

23   Petitioner's SAGR is a 900-plus page document Petitioner filed *pro se* on direct appeal

that raised at least 15 numbered grounds for review. (*See* State Court Rec. II, Ex. 6.) It was not fully considered by the Court of Appeals because it substantially exceeded the Court of Appeals' 50-page limit under the Washington Rules of Appellate Procedure. (*See* State Court Rec. I, Ex. 2 at 49-50.) Petitioner did not attach his SAGR, or otherwise include any substantive argument as to any of the claims raised in his SAGR, in the body of his motion for discretionary review. (*See* State Court. Rec. III, Ex. 9.)

Because Petitioner failed to provide specific factual and legal argument on each claim addressed under his first and fourth grounds for relief to the Washington Supreme Court in his motion for discretionary review on his direct appeal, Petitioner's "incorporation by reference" of his SAGR did not fairly present his claims to properly exhaust those grounds for relief. *See Baldwin*, 541 U.S. at 30-32; *Insyxiengmay*, 403 F.3d at 668-69. Similar to *Womack*, the Washington Supreme Court would have been required to "read beyond a petition or brief" to uncover Petitioner's federal law claims by having to consult Petitioner's SAGR, which fails to satisfy the fair presentation requirement for federal habeas exhaustion purposes. *See Baldwin*, 541 U.S. at 32; *Womack*, 2019 WL 2437842 at *5-6. This case is also distinguishable from *Insyxiengmay*, and this Court's prior decisions in *Silva* and *Wiggins*, because Petitioner did not attach or otherwise append his SAGR to his motion for discretionary review. (*See* State Court. Rec. III, Ex. 9.) Moreover, Petitioner failed to present either grounds to the Washington Supreme Court on state collateral review. (*See* State Court Rec. IV, Ex. 17 at 20.)

Given Petitioner's failure to fairly present his claims to the Washington Supreme Court, Petitioner has technically exhausted, but procedurally defaulted, his first and fourth grounds for relief. RCW 10.73.090(1) provides that a petition for collateral attack on a judgment and

sentence in a criminal case must be filed within one year after the judgment becomes final. A petitioner has one year from the date the Court of Appeals issues the mandate to file a timely challenge. RCW 10.73.090(3)(b). Petitioner's judgment became final on August 18, 2017, when the Court of Appeals issued the mandate on his direct appeal. (*See* State Court Rec. III, Ex. 11.) Since more than one year has passed since that date, the Washington state courts would dismiss as untimely any personal restraint petition filed now attempting to raise Petitioner's first and fourth grounds for relief. *See* RCW 10.73.090; *Coleman*, 501 U.S. at 735 n.1. In addition, Washington law prohibits the filing of second collateral challenges to a criminal judgment. RCW 10.73.140.

Finally, since the Court concludes Petitioner's first and fourth grounds for relief are procedurally defaulted, the Court may only review Petitioner's claim if he shows cause and prejudice for the default or demonstrates that failure to consider his claims will result in a "fundamental miscarriage of justice." *See Coleman*, 501 U.S. at 750. To satisfy the "cause" prong of the cause and prejudice standard, a petitioner must show some objective factor external to the defense prevented him from complying with the state's procedural rules. *Id*. at 753 (citing *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). To show "prejudice," a petitioner "must shoulder the burden of showing, not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis in original). In addition, in a "truly extraordinary case," the Court may grant federal habeas relief without a showing of cause or prejudice to correct a "fundamental miscarriage of justice" where a constitutional violation has resulted in the conviction of a defendant who is actually innocent. *Schlup v. Delo*, 513 U.S. 298, 321-22 (1995).

1    Here, Petitioner fails to argue or otherwise demonstrate cause and prejudice exists for

2    lifting the procedural default of his first or fourth grounds for relief. (*See* Pet.'s Reply at 2-4.) In

3    his reply, Petitioner submits that the trial court's admission of a child protective services ("CPS")

4    referral caused him "actual prejudice" because he is "actually innocent" of the crimes identified

5    in the referral. (*See id.* at 6-8.) However, absent Petitioner's brief statement in his reply,

6    Petitioner did not specifically address the cause and prejudice standard or how the CPS referral

7    functions to lift the procedural default to his first and fourth grounds for relief. (*See id.*) Even

8    upon a charitable reading, Petitioner fails to demonstrate some objective factor external to the

9    defense prevented him from timely raising his unexhausted grounds to the Washington Supreme

10   Court to satisfy the "cause" prong. Because Petitioner has not met his burden of demonstrating

11   cause for his procedural default on either of his unexhausted grounds, the Court need not

12   determine whether there was any actual prejudice. *See Cavanaugh v. Kincheloe*, 877 F.2d 1443,

13   1448 (9th Cir. 1989) (citing *Smith v. Murray*, 477 U.S. 527, 533 (1986)).

14   Petitioner also fails to establish he is "actually innocent" for the purposes of excusing the

15   procedural bar to either of his unexhausted grounds for relief. "[A]ctual innocence, if proved,

16   serves as a gateway through which a petitioner may pass whether the impediment is

17   a procedural bar . . . ." *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013). "A petitioner fails to

18   demonstrate a credible claim of actual innocence "unless he persuades the district court that, in

19   light of the new evidence, no juror, acting reasonably, would have voted to find his guilty

20   beyond a reasonable doubt." *Id.* (quoting *Schlup*, 513 U.S. at 329); *see House v. Bell*, 547 U.S.

21   518, 538 (2006) (emphasizing the *Schlup* standard is demanding and rarely met). A petitioner

22   must "support his allegations of constitutional error with new reliable evidence—whether it be

23

exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324.

On this aspect, Petitioner fails to present any evidence, much less any new exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence, that demonstrates his actual innocence. It appears Petitioner primarily relies on the CPS referral report that was presented at his trial and his newly discovered "other suspect" evidence, which was previously presented to the Court of Appeals and makes up the basis for claims later considered by this Court under Petitioner's second and third grounds for relief. (*See* Pet.'s Mem. at 4; Pet.'s Reply at 5-8.) But as later determined in this Report and Recommendation in addressing Petitioner's second and third grounds for relief on the merits, the totality of Petitioner's submitted evidence was properly excluded as speculative, or correctly determined to be speculative, by the Court of Appeals. *See Larsen v. Soto*, 742 F.3d 1083, 1096 (9th Cir. 2013) ("[W]e have denied access to the *Schlup* gateway where a petitioner's evidence of innocence was merely cumulative or speculative or was insufficient to overcome otherwise convincing proof of guilt."). As such, Petitioner's cited evidence is not proof showing a reasonable jury would not have convicted him but for the alleged constitutional error. *See McQuiggin v. Perkins*, 569 U.S. at 386; *Schlup*, 513 U.S. at 329. Petitioner's gateway actual innocence claim therefore fails to demonstrate either of his unexhausted claims under his first or fourth grounds for relief are eligible for federal habeas review.

Accordingly, the Court recommends Petitioner's first and fourth grounds for relief be denied based on Petitioner's failure to properly exhaust, and subsequent default, of his claims.

1        **B.        Section 2254 Merits Review**

2        Federal habeas corpus relief is available only to a person "in custody in violation of the

3    Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A habeas corpus

4    petition may be granted with respect to any claim adjudicated on the merits in state court only if

5    the state court's decision was contrary to, or involved an unreasonable application of, clearly

6    established federal law, as determined by the Supreme Court, or if the decision was based on an

7    unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d).

8        Under the "contrary to" clause, a federal habeas court may grant the writ only if the state

9    court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law,

10   or if the state court decides a case differently than the Supreme Court has on a set of materially

11   indistinguishable facts. *See Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). Under the

12   "unreasonable application" clause, a federal habeas court may grant the writ only if the state

13   court identifies the correct governing legal principle from the Supreme Court's decisions, but

14   unreasonably applies that principle to the facts of the prisoner's case. *See id.* at 407-09.

15       The Supreme Court has made clear that a state court's decision may be overturned only if

16   the application is "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 69 (2003). The

17   Supreme Court has also explained that "[a] state court's determination that a claim lacks merit

18   precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness

19   of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 88 (2011) (citing *Yarborough*

20   *v. Alvarado*, 541 U.S. 652, 664 (2004)).

21       Clearly established federal law means "the governing legal principle or principles set

22   forth by the Supreme Court at the time the state court render[ed] its decision." *Lockyer*, 538 U.S.

23   at 71-72. "If no Supreme Court precedent creates clearly established federal law relating to the

REPORT AND RECOMMENDATION - 16

1    legal issue the habeas petitioner raised in state court, the state court's decision cannot be contrary

2    to or an unreasonable application of clearly established federal law." *Brewer v. Hall*, 378 F.3d

3    952, 955 (9th Cir. 2004) (citing *Dows v. Wood*, 211 F.3d 480, 485-86 (9th Cir. 2000)).

4         In considering a habeas petition, this Court's review "is limited to the record that was

5    before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S.

6    170, 181-82 (2011). If a habeas petitioner challenges the determination of a factual issue by a

7    state court, such determination shall be presumed correct, and the applicant has the burden of

8    rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C.

9    § 2254(e)(1).

10                      *1.    Grounds Two: Right to Present a Defense*

11        First, Petitioner alleges the trial court's ruling excluding "other suspect" evidence

12   violated his constitutional right to present a defense. (Pet.'s Mem. at 4, 8-13.) "Whether rooted

13   directly in the Due Process Clause of the Fourteenth Amendment, or in the Compulsory Process

14   or Confrontation clauses of the Sixth Amendment, the Constitution guarantees defendants 'a

15   meaningful opportunity to present a complete defense.'" *Crane v. Kentucky*, 476 U.S. 683, 690

16   (1986) (quoting *California v. Trombetta*, 467 U.S. 479, 485 (1984) (citations omitted)).

17   However, the right to present a defense "is not unlimited, but rather is subject to reasonable

18   restrictions," such as evidentiary and procedural rules. *United States v. Scheffer*, 523 U.S. 303,

19   308 (1998). A criminal defendant "does not have an unfettered right to offer [evidence] that is

20   incompetent, privileged, or otherwise inadmissible under standard rules of evidence." *Taylor v.*

21   *Illinois*, 484 U.S. 400, 410 (1988).

22        The Supreme Court has previously explained that "state and federal rulemakers have

23   broad latitude under the Constitution to establish rules excluding evidence from criminal trials."

1    *Scheffer*, 523 U.S. at 308. The Supreme Court has also noted its approval of "well-established

2    rules of evidence [that] permit trial judges to exclude evidence if its probative value is

3    outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential

4    to mislead the jury." *Holmes v. South Carolina*, 547 U.S. 319, 326 (2006). The right to present a

5    meaningful defense is implicated when exclusionary rules "infring[e] upon a weighty interest of

6    the accused" and are "'arbitrary' or 'disproportionate to the purposes they are designed to

7    serve.'" *Id.* at 324 (citing *Scheffer*, 523 U.S. at 308). In *Holmes*, the Supreme Court specifically

8    noted its approval of state rules limiting other suspect evidence when the evidence fails to

9    "sufficiently connect the other person to the crime, such as where the evidence is "speculative or

10   remote, or does not tend to prove or disprove a material fact." *Id.* at 327 (citations omitted).

11         The Court of Appeals, in analyzing Petitioner's right to present a defense claim in

12   Petitioner's direct appeal, found:

13         Here, the State moved in limine "to exclude any suggestion" that the children's
         maternal grandfather abused them. As evidenced in its oral ruling on the State's
14         motion, the trial court applied *State v. Franklin*. [court's footnote: 180 Wn.2d 371,
         325 P.3d 159 (2014).] There, the supreme court discussed other suspect evidence
15         and concluded that the trial court improperly excluded other suspect evidence. In
         that case, Andre Franklin "offered evidence that [another person] had the motive,
16         ability, and opportunity to commit the charged crime, and that [the other person]
         had personally threatened [the victim] . . . in the past." [court's footnote: *Id.* at 383.]

17
         The trial court in Little's case correctly applied the *Franklin* principles in reaching
18         the correct decision to grant the State's motion to exclude the proffered "other
         suspect" evidence.
19
         The record shows that H.B., a friend of J.M. and H.M., testified that the twins
20         disclosed to her that they had been sexually abused. H.B. could not remember
         whether the name the twins used to identify their abuser was "Nick" or "Doug."
21         H.B. stated that she "got [the names] mixed up because [she] didn't know them at
         all." Doug is Little's father. But he was not the subject of the State's motion. Rather,
22         the victims' maternal grandfather was the subject of this motion.

23         The children's mother testified that she and the children temporarily lived with the
         children's maternal grandfather in late 2011 through early 2012. In 2013, the

children's maternal grandfather "stayed" with Little, the children, and their mother for a few weeks.

The evidence at the motion hearing included the child protective services intake report. It stated: "'The children live with their mother and her boyfriend and the boyfriend's father, name unknown, who is the alleged perpetrator.'" [court's footnote: Report of Proceedings (September 30, 2014) at 80-81.] The report also stated that the perpetrator "'live[d] about one mile from the family in the Alki Beach area off of [A]dmiral [W]ay.'" [court's footnote: *Id.*] The record further indicates that the children's maternal grandfather lived at that location. Defense counsel argued that the statements referring to Little's father actually referred to the children's maternal grandfather.

The trial court granted the State's motion in limine to exclude this proffered evidence. In its ruling, the court stated:

> With that, what we have presently . . . established . . . would be [the children's maternal] grandfather's presence for two to three weeks in the family home, and then the disputed evidence about improper labeling and a person residing in Alki or the West Seattle area. With that record, there simply doesn't exist any chain of facts or circumstances. There is mere opportunity. There is not even motive. [court's footnote: *Id.* at 112.]

We conclude that the trial court did not abuse its discretion in excluding other suspect evidence concerning the children's maternal grandfather. Little's argument focuses on the fact that the children's maternal grandfather lived with them, their mother, and Little at certain periods of time. Little also argues that the children's maternal grandfather lived in a trailer near their home. Finally, Little claims that the report to protective services should be read to refer to the maternal grandfather, despite its plain language.

But these facts are insufficient to satisfy Little's burden to establish a combination of facts or circumstances pointing "to a nonspeculative link between the other suspect and the charged crime." [court's footnote: *Franklin*, 180 Wn.2d at 381 (emphasis added).] As the trial court correctly concluded, these facts establish only opportunity on the part of the maternal grandfather. They do not, as the trial court correctly determined, establish motive or anything else to show something more than mere speculation.

Little argues that the evidence establishes more than a speculative link and relies on the fact that H.B. allegedly identified "Doug" as the twins' abuser. He then attempts to make a connection between the children's maternal grandfather and Doug, who Little refers to as a "grandfather-like figure" in his appellate briefs. Little essentially argues that the twins mistakenly referred to Doug, when they really meant to refer to their maternal grandfather, as their abuser.

REPORT AND RECOMMENDATION - 19

1

2

3

4

> This is mere speculation. As previously stated, H.B. testified that she could not remember whether the abuser was "Nick" or "Doug." Although H.B. may have been mistaken as to whom the twins referred to as their abuser, this fails to establish that the twins identified their maternal grandfather as their abuser. Thus, this does nothing to establish "a nonspeculative link between [the children's maternal grandfather] and the charged crime." [court's footnote: *Id.*]

5   (State Court Rec. I, Ex. 2, at 19-22.)

6       Here, the trial court reasonably excluded Petitioner's "other suspect" evidence because it

7   failed to reasonably establish a combination of facts or circumstances pointing "to a

8   nonspeculative link" between the victims' maternal grandfather and the charged conduct. (*See*

9   State Court Rec. I, Ex. 2, at 22.) The record demonstrates H.B. testified that the victims disclosed

10  to her they had been sexually abused by "Nick," the Petitioner, or "Doug," the Petitioner's

11  father, but that H.B. could not remember who the victims specifically named. (*Id.* at 20.) The

12  victims' maternal grandfather lived with Petitioner and the victims for a short period of time and

13  eventually lived in a trailer within a mile of the victims' home. (*Id.* at 21.) Though H.B. may

14  have been mistaken as to whom the victims meant to refer to, H.B.'s testimony in consideration

15  with the maternal grandfather's proximity to the home fails to plausibly demonstrate the victims

16  meant to name their maternal grandfather as their abuser to H.B. On this basis, the Court of

17  Appeals reasonably concluded the facts presented by Petitioner did not sufficiently connect the

18  victims' maternal grandfather to the abuse, and at most, only evidenced opportunity on the part

19  of the victims' maternal grandfather. *See Holmes*, 547 U.S. at 326-27.

20      Furthermore, the Supreme Court has not yet "squarely addressed" the question of

21  whether a trial court's exclusion of evidence results in a violation of a defendant's right to

22  present a defense nor established a "controlling legal standard" for evaluating such

23  exclusions. *See Brown v. Horell,* 644 F.3d 969, 983 (9th Cir. 2011); *Moses v. Payne*, 555 F.3d

742, 758 (9th Cir. 2009); *see also Rafay v. Obenland*, 2020 WL 5984210, at *18 (W.D. Wash.

Jan. 28, 2020), *report and recommendation adopted*, 2020 WL 5982000 (W.D. Wash. Oct. 8,

2020). Consequently, Petitioner cannot demonstrate the Court of Appeals' decision upholding

the exclusion of the "other suspect" evidence in this case was contrary to, or involved an

unreasonable application of, clearly established Supreme Court precedent. The Court therefore

recommends that Petitioner's second grounds for relief be denied.

### 2.    Grounds Three: Ineffective Assistance of Counsel

Next, Petitioner alleges his trial counsel provided ineffective assistance of counsel by

failing to obtain and present additional evidence in support of his "other suspect" evidence claim.

(Pet.'s Mem. at 4, 13-20.) The Sixth Amendment guarantees a criminal defendant the right to

effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668 (1984). "The essence of

an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial

balance between defense and prosecution that the trial was rendered unfair and the verdict

rendered suspect." *Kimmelman v. Morrison*, 477 U.S. 365, 374 (1986). Under *Strickland*, for a

claim of ineffective assistance of counsel, a defendant must prove that: (1) counsel's

performance was deficient; and (2) the deficient performance prejudiced the defense. *Strickland*,

466 U.S. at 687.

Under the first prong of the *Strickland* test, a petitioner must show that counsel's

performance fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688.

Judicial scrutiny of counsel's performance must be highly deferential. *Id.* at 689. The Ninth

Circuit has made clear that "'[a] fair assessment of attorney performance requires that every

effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of

counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the

1   time.'" *Campbell v. Wood*, 18 F.3d 662, 673 (9th Cir. 1994) (quoting *Strickland*, 466 U.S. at

2   689).

3       The second prong of the *Strickland* test requires a showing of actual prejudice related to

4   counsel's performance. *Strickland*, 466 U.S. at 692. In order to establish prejudice, a petitioner

5   "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the

6   result of the proceeding would have been different. A reasonable probability is a probability

7   sufficient to undermine confidence in the outcome." *Id.* at 694. The reviewing court need not

8   address both components of the inquiry if an insufficient showing is made on one

9   component. *Id.* at 697. Furthermore, the second prong "requires a 'substantial,' not just

10  'conceivable,' likelihood of a different result." *Pinholster*, 563 U.S. at 189 (quoting *Richter*, 562

11  U.S. at 104).

12      Where a state court rejects an ineffectiveness claim on the merits, the "pivotal question"

13  in a § 2254 proceeding "is whether the state court's application of the *Strickland* standard was

14  unreasonable." *Richter*, 562 U.S. at 101. Therefore, the Court employs a "'doubly deferential'"

15  review, taking a "'highly deferential' look at counsel's performance and through the 'deferential

16  lens of 2254(d).'" *Pinholster*, 563 U.S. at 190 (quoting *Knowles v. Mirzayance*, 566 U.S. 111,

17  123 (2009)). As such, the petitioner "must demonstrate that it was necessarily unreasonable" for

18  the state court to rule as it did. *Id.*

19      In adjudicating Petitioner's ineffective assistance of counsel claim on state collateral

20  review, the Court of Appeals determined:

21          Little argues that he received ineffective assistance of counsel based upon trial
            counsel's failure to locate and present documents which allegedly demonstrate the
22          opportunity and motive of Sherri Kidney's father Allen Kidney to commit the
            offenses, as well as Sherri's motive to falsely testify against him. Little contends
23          that this evidence would have changed the court's decision to deny the admission
            of "other suspect" evidence concerning Allen Kidney, thereby creating a reasonable

probability that the outcome of the trial would have been different but for defense counsel's unprofessional errors.

. . .

The trial court granted the State's motion in limine to exclude any suggestion that Sherri Kidney's father Allen Kidney abused the girls. The record showed that H.B., the child to whom the twins disclosed abuse, could not remember whether the name the twins used to identify their abuser was "Nick" (the defendant) or "Doug" (the defendant's father). The evidence at the motion hearing included the CPS intake report, which identified the alleged perpetrator as "the boyfriend's father" and indicated that he lived about a mile away in the Alki Beach area of West Seattle. The record indicates that Allen Kidney, whom the girls referred to as "Papa," lived in a trailer in that area. The record further indicates that Nick Little's father Doug also lived nearby in West Seattle. Sherri Kidney testified that she and the children temporarily lived with her father Allen Kidney in 2011 and that she stayed with them in her home for several weeks in 2013. On this basis, defense counsel argued that statements indicating that Little's father Doug was the perpetrator actually referred to the children's maternal grandfather Allen Kidney. The trial court, applying the *Franklin* factors, concluded that the evidence established mere opportunity but not motive regarding Allen Kidney. On direct appeal, this court held that the trial court did not abuse its discretion by excluding evidence suggesting that Allen Kidney was the abuser. The court rejected as "mere speculation" Little's claim that the twins mistakenly referred to his father Doug as their abuser when they really meant to refer to Allen Kidney.

Little now asserts that the following documents, which defense counsel did not obtain before trial, provide exculpatory information that would have been essential to his "other suspect" defense:

1) A full transcript and audio enhancement of a police officer's recorded in-car interview of A.M. and her mother, Sherri Kidney;

2) A 2008 police report in which Sherri Kidney reported to the Tacoma Police Department her concern that a female cousin who babysat her daughters had molested them when they were 2 and 4 years old;

3) A copy of a 2002 petition for protection order filed by Tammy Kidney (Sherri Kidney's mother) against Allen Kidney, Sherri Kidney's father;

4) Evidence relating to a 2011 CPS report in involving A.M. briefly becoming lost at the Crystal Mountain ski resort.

But even if defense counsel had obtained these documents and presented them during trial, the existence of such evidence would not have changed the trial court's ruling excluding "other suspect" evidence regarding Allen Kidney.

REPORT AND RECOMMENDATION - 23

<u>Enhanced Audio Recording</u>. The trial court admitted excerpts of Seattle Police Officer William Askew's in-car recorded interview with A.M. as child hearsay. Little now contends that the full transcript of the enhanced audio recording is relevant because it shows A.M. never expressly named her abuser anywhere on the recording. On this basis, Little suggests A.M.'s statements were consistent in describing either Little or Allen Kidney. He further asserts Officer Askew conflated the story the twins told their playmate with A.M.'s description of abuse and distorted the investigation by telling Sherri Kidney that A.M. disclosed "rape." But Officer Askew testified that A.M. identified Little as her abuser. The record indicates that the in-car recording system was activated after Officer Askew began speaking with A.M. Little's theory that A.M. might have been describing abuse by Allen Kidney is unfounded and speculative.

Little further asserts that the enhanced recording is significant because it contains statements made by Sherri Kidney regarding prior sexual abuse allegations regarding her female cousin, who babysat the girls in 2008. But the record shows that this information was known to all parties from other sources, and that defense counsel thoroughly questioned Sherri Kidney regarding these allegations prior to trial. A defendant seeking relief under a failure to investigate theory "must show a reasonable likelihood that the investigation would have produced useful information not already known to defendant's trial counsel." *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 739, 101 P.3d 1 (2004). This information was not new. In fact, the trial court granted the State's motion to exclude evidence of the babysitter allegations, finding that any relevance under ER 401 was "swamped" by potential prejudice under ER 403.

<u>2008 Police Report</u>. Little asserts that defense counsel should have located and offered at trial a copy of the 2008 police report in which Sherri Kidney reported her concern that a female cousin who babysat her daughters had molested them when they were 2 and 4 years old. Little asserts that the police report was relevant to the children's knowledge base and to Sherri Kidney's perceived self-interest in maintaining custody of her daughters. But the police report contains no new information that would have changed the trial court's ruling.

<u>Petition for Protection Order</u>. Little contends defense counsel should have obtained a copy of a 2002 protection order filed against Allen Kidney by Tammy Kidney, the mother of Sherri Kidney. Little contends that the petition produces evidence of Allen Kidney's motive to sexually abuse his young granddaughters because it alleged that Allen Kidney physically, sexually, and mentally abused his daughter Sherri Kidney. In fact, the petition alleges that Allen Kidney did these things to his then-wife Tammy Kidney, not to his daughter Sherri Kidney. Tammy Kidney's allegations regarding domestic abuse in the context of a marital relationship do not provide evidence of Allen Kidney's alleged motive to sexually abuse his young granddaughters. The petition does allege that Allen Kidney put his adult daughter Sherri Kidney in a choke hold during an argument, but it contains no allegation of

sexual abuse relating to Sherri Kidney or any other child. Nothing in the protection order would have changed the trial court's ruling.

2011 CPS Report. Little argues that a CPS report involving A.M. briefly becoming lost at the Crystal Mountain ski resort in 2011 was relevant because it shows Sherri Kidney was aware that she could lose custody of her children if she were to be implicated in the investigation. But this subject was litigated during motions in limine. The trial court allowed the defense to admit evidence that A.M. got lost at Crystal Mountain and granted the State's motion to exclude any reference to CPS involvement. The CPS report adds nothing that would change this ruling, Even if it did, Little has not shown how such evidence would have changed the court's ruling regarding other suspect evidence.

. . .

Little has not demonstrated that counsel's failure to locate and offer these documents was objectively unreasonable or a reasonable probability that the outcome of the trial would have been different but for these omissions. Thus, no hearing is required.

(State Court Rec. IV, Ex. 16 at 8-13.)

The Washington Supreme Court Commissioner similarly concluded Petitioner failed to demonstrate his trial counsel provided deficient representation or that he was prejudiced by his performance. On this aspect, the Commissioner found:

The trial court held that the defense had produced only speculative evidence that a third party (the victims' grandfather) had committed the sexual assaults. Mr. Little identifies four pieces of evidence that trial counsel failed to identify and submit to the trial court: (1) a more complete version of a police officer's in-car interview with one victim and her mother; (2) a 2008 police report in which the mother alleged that a female cousin may have committed abuse; (3) a 2002 protection order protecting the victims' mother from the victims' grandfather; and (4) a 2011 report that one of the victims became lost at a ski resort, showing that the mother knew she could lose custody of her children. The acting chief judge analyzed this evidence and dismissed the petition as frivolous because none of it amounted to more than speculation that the victims' grandfather committed the assaults. The acting chief judge is correct, and Mr. Little fails to demonstrate any basis for review under RAP 13.4(b). Under the "other suspect" standards outlined above, counsel's failure to present these additional four pieces of evidence was not prejudicial. There is no reasonable probability that submitting this evidence would have changed the outcome of the trial.

REPORT AND RECOMMENDATION - 25

(State Court Rec. IV, Ex. 18 at 49.)

Here, Petitioner is not entitled to habeas relief on his third grounds for relief because the Washington Supreme Court reasonably applied *Strickland* in determining Petitioner's trial counsel's alleged failure to develop the "other suspect" evidence did not prejudice Petitioner. Petitioner's habeas petition presents three of the four pieces of evidence he alleges trial counsel failed to investigate and submit to the trial court in developing the "other suspect" evidence: (1) a full-length transcript of Officer William Askew's in-car video recording with the victims' mother; (2) a 2008 police report in which the victims' mother alleged a female cousin and babysitter committed the abuse; and (3) a 2002 protection order granted to the victims' mother against the victims' maternal grandfather. (*See* Pet.'s Mem at 13-15.) In his petition, Petitioner elaborates that this newly discovered evidence "reveals bias evidence, impeachable witness statements, and evidence of third-party guilt." (*See id.* at 20.) Nevertheless, Petitioner's cited "other suspect" evidence remains highly speculative. As correctly determined by the state courts, the newly discovered "other suspect" evidence fails to reasonably evince that the victims' maternal grandfather or the victims' previous babysitter committed the sexual assaults. (*See* State Court Rec. IV, Ex. 16 at 8-13; State Court Rec. IV, Ex. 18 at 49.) The Washington Supreme Court's application of *Strickland* was reasonable because Petitioner's submitted evidence would not have changed the outcome of Petitioner's trial, and therefore, Petitioner's claim necessarily fails under *Strickland's* second prong for failure to demonstrate prejudice. *See Strickland*, 466 U.S. at 692, 694.

Petitioner has not shown the decision of the state courts was contrary to, or constituted an unreasonable application of, clearly established federal law. The Washington Supreme Court

1    reasonably rejected Petitioner's ineffective assistance of counsel claim. The Court recommends

2    Petitioner's third grounds for relief be denied.

3                    *3.    Right to Testify*

4          Finally, Petitioner asserts his trial counsel deprived him of his constitutional right to

5    testify because his trial counsel prevented him from testifying and that the trial court erred in

6    failing to ensure any waiver of his right to testify was knowing, intelligent, and voluntary. (Pet.'s

7    Mem. at 4-5, 34-38.) The United States Supreme Court has recognized that a criminal defendant

8    has a constitutional right to testify in his own defense. *Rock v. Arkansas*, 483 U.S. 44, 49-52

9    (1987). The Supreme Court has further recognized "that the accused has the ultimate authority to

10   make certain fundamental decisions regarding the case, as to whether to plead guilty, waive a

11   jury, testify in his or her own behalf, or take an appeal." *Jones v. Barnes*, 463 U.S. 745, 751

12   (1983) (citations omitted).

13         The Ninth Circuit has previously recognized that a defendant's waiver of his right to

14   testify must be knowing and intentional but has held such a waiver need not be explicit. *United*

15   *States v. Pino-Noriega*, 189 F.3d 1089, 1094 (9th Cir. 1999) (citing *United States v. Joelson*, 7

16   F.3d 174, 177 (9th Cir. 1993)). Rather, "waiver of the right to testify may be inferred from the

17   defendant's conduct and is presumed from the defendant's failure to testify or notify the court of

18   his desire to do so." *Id*. at 1095 (citing *Joelson*, 7 F.3d at 177). A defendant is also "presumed to

19   assent to his attorney's tactical decision not to have him testify." *Id*. "When a defendant remains

20   'silent in the face of his attorney's decision not to call him as a witness,' he waives the right to

21   testify." *Id*. (citing *United States v. Nohara*, 3 F.3d 1239, 1244 (9th Cir. 1993)).

22         On Petitioner's right to testify claim, the Court of Appeals found:

23

Here, there is no credible evidence to show that Little's attorney prevented him from testifying. Thus, an evidentiary hearing was unnecessary. The court did not abuse its discretion in denying Little's motion on the record before this court.

After the defense rested, the State asked the court to address Little in a colloquy regarding his right to testify. The following exchange occurred:

> [PROSECUTOR]: So because of what I'm hearing from [defense counsel], I take his word at face value, and where we are right now, I think it's just critical that the [c]ourt makes sure that Mr. Little['s waiver] is knowingly and voluntarily.

> [TRIAL COURT]: What I would feel comfortable with is asking his attorney. [Defense counsel], if you would address, generally, whether you believe it's the case that your client understands his applicable constitutional rights?

> [DEFENSE COUNSEL]: I, in fact, do believe that. I believe that he understands his right to counsel, and this is a decision that—I won't go into the details of it, but he's been apprised as the [c]ourt would imagine competent counsel would do, and I hope I've been competent.

> [TRIAL COURT]: And do you believe it is clear to your client that he has the absolute right to testify and the absolute right to not testify[?]

> [DEFENSE COUNSEL]: Yes, Your Honor. [court's footnote: Report of Proceedings (October 21, 2014) at 83-84.].

Soon after, the court had the following discussion with Little:

> [TRIAL COURT]: First, Mr. Little, do you have any questions of me, any questions of the [c]ourt regarding what your attorney addressed earlier; that is, your right to testify absolutely and your right not to testify?

> THE DEFENDANT: Not at all, Your Honor.

> [TRIAL COURT]: All right. Thank you. [court's footnote: *Id.* at 88.].

After the jury entered its verdict, Little moved for a new trial. Defense counsel submitted a declaration supporting the motion and explained that he and the prosecutor "became aware that [Little] had a very strong odor of alcohol about him." Counsel also described two incidences of Little's inappropriate behavior that

day and explained that the events "raise[d] a serious question as to whether the defendant was in a position of making a competent decision whether to testify in his own defense." Counsel later filed a motion to withdraw.

The trial court granted counsel's motion to withdraw, and Little obtained new counsel.

In March 2015, Little submitted a declaration and described his consumption of alcohol the night before and the morning of his court appearance. He declared that he expressed his desire to testify to defense counsel and that counsel responded: "'I cannot put you on.'" Little also referred to a note he gave counsel during trial, which stated: "I think it'd be wise for me to get on the stand. I just wish I could tell the whole story." [court's footnote: Clerk's Papers at 307.]

Little further described what counsel had told him during their discussion, stating:

> He told me that there was a possibility that the jury might smell the alcohol or think I was drunk. He further told me that the [c]ourt might hold me in contempt or revoke my bond if it realized that I smelled so strongly of alcohol. [Counsel] never discussed with me the possibility of requesting a recess or continuance so that I could testify at some point in the future. [court's footnote: *Id.* at 88.]

Lastly, Little explained his reasons for not testifying, stating:

> The consideration of getting in[to] trouble with the court or having the jury believe I was intoxicated or hung over were a substantial part of my decision not to object when [counsel] told the [c]ourt that I would not be testifying. Had I known that it would have been possible to testify at some later time when I did not appear hung over or smell of alcohol, I would have demanded that [counsel] pursue that option. [court's footnote: *Id.*]

In the State's response to Little's motion for an evidentiary hearing, it attached transcripts of Little's telephone calls from jail and two declarations from original defense counsel.

In his declarations, counsel explained his interpretation of his conversations with Little. Counsel stated: "It was understood that Mr. Little's decision to testify would be made during the trial after the State finished presenting its case in chief." [court's footnote: *Id.* at 302.] Additionally, counsel described Little's failure to appear at two of their three scheduled meetings to prepare his testimony. Little also failed to call counsel as scheduled and failed to return counsel's calls regarding the testimony preparation meetings. Counsel believed that Little "was ill-prepared to testify" and told Little: "I don't see how I can put you on."

Counsel further stated that he advised Little that it was his right and decision to testify and did not recall Little stating that he wanted to testify. Counsel "assertively told" Little "that it would be a really, really bad decision if he decided to testify." Counsel also declared: "I never told Mr. Little that he could not testify. I never made any promises or threats to Mr. Little in order to persuade him one way or the other about his right and decision to testify." [court's footnote: *Id.* at 305.] Additionally, counsel acknowledged that he did not discuss with Little "the possibility of requesting a recess or continuance of the defense case-in-chief so that he may testify without the risk of the jury smelling alcohol on [him]." [court's footnote: *Id.* at 213.]

In one of Little's jail telephone calls, he referred to counsel and stated:

> I would be okay with a mistrial and retrial for sure this time knowing that the pros, or the judge, or the jury's gonna most likely convict I will definitely get on the stand. I thought maybe that there would be reasonable doubt in this case and [counsel] advised me not to get on the stand so [I] didn't. But had I known that there would have been this, if this was gonna be, if . . . I'd [ ] known this was gonna be the outcome or had even the slightest inclination that this was gonna be the outcome I for sure would have been put on the stand. I would have been like yes I wanna go on the stand you know. [court's footnote: *Id.* at 108.]

In another phone call, Little stated:

> I told him the whole time . . . I wanna go up there and I wanna share my piece. But at the same time its like if I'm gonna be attacked by the prosecutor and it's gonna hurt me I don't wanna do that. He was like oh yeah you're not going up there then. [court's footnote: *Id.* at 332.]

Little also stated:

> [H]e's trying to say that I wasn't competent to get on the stand and testify on that day because I was drunk and that's true I guess to a certain extent. But it's, also, because he advised me not to . . . for all the . . . throughout the whole entire course of the trial . . . . [court's footnote: *Id.* at 368.]

The trial court determined that the record did not establish "as probably true that Defendant demanded to testify, nor that [counsel] prevented or refused any such demand." [court's footnote: *Id.* at 407.] It also found that Little's claims and credibility were "seriously undermined by his post-verdict statements captured in telephone calls." [court's footnote: *Id.*] Thus, the trial court denied Little's motions for an evidentiary hearing and a new trial.

1

2

3

4

5

6

7

> The record on appeal shows that Little's claims were simply not credible in view of the record before the trial court. Little was present when counsel represented to the court that Little understood his right to testify and chose not to exercise it. Shortly after, the trial judge asked Little if he had any questions to which Little replied in the negative. If he had questioned the representations his counsel made to the court at that time, he could have raised the issue when invited to do so by the court. He did not.
>
> Moreover, Little's post verdict statements captured on his phone calls from jail undermine the argument he now makes on appeal. Accordingly, he has failed in his burden to show either a right to an evidentiary hearing or the trial court's abuse of discretion in denying his motion for a new trial.

8    (State Court Rec. I, Ex. 2, at 44-49.)

9          Here, as the Court of Appeals correctly concluded, the evidence provided by Petitioner to

10    support his claim he was denied his right to testify by his trial counsel is unavailing. Based on

11    the record, Petitioner directly engaged with the trial court regarding his decision not to testify

12    and Petitioner's post-verdict phone calls indicate he knowingly, voluntarily, intelligently waived

13    his right to testify based on a reasoned consultation with his trial counsel. (*See* State Court Rec. I,

14    Ex. 2, at 44-49.) Because Petitioner fails to rebut the Court of Appeals' finding by clear and

15    convincing evidence, the Court of Appeals' determination of the factual issues underlying

16    Petitioner's right to testify claim is also presumed correct. *See* 28 U.S.C. § 2254(e)(1). In

17    addition, Petitioner waived his right to testify by choosing to remain silent at trial and not

18    invoking the right. *See Pino-Noriega*, 189 F.3d at 1094; *Nohara*, 3 F.3d at 1244.

19          The Court finds Petitioner has not demonstrated the Court of Appeals decision was

20    contrary to, or constituted an unreasonable application of clearly established Supreme Court

21    precedent concerning his right to testify nor has he demonstrated the decision was based on an

22    unreasonable determination of the facts. Therefore, the Court recommends that Petitioner's fifth

23    grounds for relief be denied.

1        C.      **Evidentiary Hearing**

2        Finally, Petitioner appears to request an evidentiary hearing for the Court to further

3 determine facts regarding the CPS referral, the "other suspect" evidence, and to determine

4 whether his trial counsel prevented him from testifying. (Pet.'s Mem. at 32-33, 37-38; Pl.'s

5 Reply at 11.) Petitioner argues an evidentiary hearing is necessary because it would allow him to

6 testify in regard as to "the situation at the time of his arrest, what he understood about the

7 children being abused, what Sherri had disclosed to him about her children being abused, [Allen

8 Kidney's] involvement in the household(s) where he lived with the children, and Sherri's

9 disclosure of victimization by her father, [Allen Kidney]." (Pet.'s Mem. at 32-33, 39.)

10       The decision to grant an evidentiary hearing lies within the discretion of the Court.

11 *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). The Court "must consider whether such a

12 hearing could enable an applicant to prove the petition's factual allegations, which, if true, would

13 entitle the applicant to federal habeas relief." *Id*. at 474 (citation omitted). The Court's review

14 under 28 U.S.C. § 2254(d)(1) is limited to the record before the state court. *Pinholster*, 563 U.S.

15 at 181-82. Therefore, a hearing is not required if the factual allegations would not entitle

16 Petitioner to relief under § 2254(d). *See Landrigan*, 550 U.S. at 474. "It follows that if the record

17 refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is

18 not required to hold an evidentiary hearing." *Id*.

19       The Court finds it is not necessary to hold an evidentiary hearing in this case because

20 Petitioner's claims may be resolved on the existing state court record. *See Totten v. Merkle*, 137

21 F.3d 1172, 1176 (9th Cir. 1998) ("[A]n evidentiary hearing is not required on issues that can be

22 resolved by reference to the state court record."). Because Petitioner has not alleged facts that

23 would entitle him to habeas relief, his request for an evidentiary hearing should be DENIED.

## V.    CERTIFICATE OF APPEALABILITY

A petitioner seeking post-conviction relief under § 2254 may appeal a district court's dismissal of his federal habeas petition only after obtaining a certificate of appealability from a district or circuit judge. A certificate of appealability may issue only where a petitioner has made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(3). A petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327. Under this standard, the Court concludes a certificate of appealability should be denied as to all of Petitioner's claims.

## VI.    CONCLUSION

For the foregoing reasons, this Court recommends Petitioner's habeas petition (dkt. # 6) be DISMISSED with prejudice. A proposed Order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit by no later than **twenty-one (21)** days after the filing of this Report and Recommendation. Objections, and any response, shall not exceed three pages. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motion calendar **fourteen (14)** days after they are served and filed. Responses to objections, if any, shall be filed no later than **fourteen (14)** days after service and filing of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **June 4, 2021.**

1    The Clerk is directed to send copies of this Report and Recommendation to the parties

2  and to the Honorable Thomas S. Zilly.

3    Dated this 12th day of May, 2021.

4

5    _____
     MICHELLE L. PETERSON
6    United States Magistrate Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

REPORT AND RECOMMENDATION - 34